UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

**RUBEN CHAIN,**

        Plaintiff,

          v.

**PERERTO RICO FEDERAL AFFAIRS
ADMINISTRATION (PRFFA), ET AL.,**

       Defendants.

CIV. NO. 15-1012 (PG)

<u>**OPINION AND ORDER**</u>

    Pending before the court is defendants Puerto Rico Federal Affairs Administration ("PRFAA") and Juan Eugenio Hernandez-Mayoral's motion for judgment on the pleadings (Docket No. 32). For the reasons set forth below, the court **GRANTS** the defendants' motion.

**I. BACKGROUND**

    On January 8, 2015, plaintiff Ruben Chain ("Plaintiff" or "Chain"), a resident of Maryland, filed the above-captioned claim against defendants PRFAA and Juan Eugenio Hernandez-Mayoral ("Hernandez-Mayoral") in his official and individual capacity. <u>See</u> Docket No. 1. Chain alleges that Hernandez-Mayoral, the appointed Executive Director of PRFAA, discharged him from his position as Driver to the Executive Director. The Plaintiff had been working at PRFAA in Washington D.C. since 1989 until his termination on January 11, 2013. The position he occupied was classified as a trust position. <u>See</u> Docket No. 24 at ¶ 6. Defendants admit that after the PDP regained power in the 2012 elections, co-defendant Hernandez-Mayoral dismissed Chain and did not afford him a hearing prior or after his dismissal. <u>See</u> Docket No. 24 at ¶ 18.

    It is uncontested that Chain had worked as a chauffeur under the auspices of both the Popular Democratic Party ("PDP") and the New Progressive Party ("NPP"). <u>See</u> Docket No. 24 at page 2. In fact, the Plaintiff alleges that he is not affiliated with any political party in Puerto Rico, and has never voted in any election in Puerto Rico. <u>See</u> Docket No. 1 at ¶ 7. According to Chain, Hernandez-Mayoral dismissed him from his employment in alleged retaliation for testifying against former Governor Anibal Acevedo Vilá ("Acevedo") during federal criminal proceedings against

Acevedo for campaign finance violations. Like co-defendant Hernandez-Mayoral, former Governor Acevedo was affiliated with the Popular Democratic Party (PPD).

In the complaint, Chain claims that his cooperation with the government during the course of the investigation that led to Acevedo's indictment in 2008 contributed to Acevedo's landslide defeat in his quest for governor of Puerto Rico during the elections of that same year. See Docket No. 1 at ¶ 12. During the criminal trial held in 2009 after the 2008 elections, Chain allegedly testified that he had driven Acevedo to various meetings with an official that was convicted of conspiring to commit electoral fraud. See Docket No. 1 at ¶ 11. Chain claims he testified in regards to exchanges of envelopes between the two. Id. Nevertheless, Plaintiff alleges that his testimony during the trial was as a citizen, not a public employee, because his job description did not include reporting on the whereabouts of his superiors or their activities. Id. at ¶ 13.

After his termination, Chain filed claims pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages, as well as injunctive relief, for alleged violations of his constitutional rights to free speech and due process under the First, Fifth and Fourteenth Amendments. See Docket No. 1. The Plaintiff additionally invoked the court's supplemental jurisdiction over the state-law claims brought pursuant to Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194a; Puerto Rico Whistleblowers Protection Act ("Law 426"), P.R. Laws Ann. tit. 1, § 601; and, Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. Laws Ann. tit. 31, §§ 5141 and 5142. See Docket No. 1.

The defendants first moved to dismiss the complaint on account that the Plaintiff's claims was time-barred, among other grounds. See Docket No. 10. The court granted in part and denied in part the defendants' motion. The court dismissed with prejudice Plaintiff's claims for monetary damages under Section 1983 against PRFAA and against Hernandez-Mayoral in his official capacity; his Fifth Amendment claims and substantive due process claims; his supplemental state law claims under Article 1802 and claims of retaliation under Law No. 115 against Hernandez-Mayoral. All

remaining supplemental state law claims against defendants were dismissed without prejudice. After such dismissals, the court continued presiding over Plaintiff's Section 1983 claims against Hernandez-Mayoral in his personal capacity and for injunctive relief against PRFAA. See Docket No. 16.

The defendants now move for judgment on the pleadings arguing that Hernandez-Mayoral is entitled to qualified immunity. See Docket No. 32. The Plaintiff opposes the dismissal of his claims. See Docket No. 36.

## II. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party, "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." Courts treat a Rule 12(c) motion for judgment on the pleadings "much like a Rule 12(b)(6) motion to dismiss." Perez-Acevedo v. Rivero Cubano, 520 F.3d 26, 29 (1st Cir. 2008). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom … ." Id. (citing R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir.2006)). Moreover, a court may not grant a defendant's Rule 12(c) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. To properly assess a Motion under Rule 12(c), the trial court must accept all of the nonmovant's well-pleaded factual averments as true. Rivera-Gomez v. De Castro, 843 F.2d 631, 635 (1st Cir. 1988). "[F]or the purposes of judgment on the pleadings the court ordinarily may consider only facts contained in the pleadings and documents fairly incorporated therein, and those susceptible to judicial notice … ." Mercury Sys., Inc. v. S'holder Representative Servs., LLC, 820 F.3d 46, 51 (1st Cir. 2016) (citing R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir.2006)). "[T]o survive a motion to dismiss (or a motion for judgment on the pleadings), the complaint must plead facts that raise a right to relief above the speculative level, … such that the entitlement to relief is plausible … ." Citibank Global Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 23 (1st Cir.2009) (internal citations omitted).

### III. DISCUSSION

**A. Qualified Immunity**

"Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011). "[Q]ualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (citing Matalon v. Hynnes, 806 F.3d 627, 632-33 (1st Cir. 2015)). "The doctrine's prophylactic sweep is broad: it leaves unprotected only those officials who, 'from an objective standpoint, should have known that their conduct was unlawful.'" Alfano, 847 F.3d at 75 (citing MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014)).

"In assessing qualified immunity, … [f]irst, we must decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right. … Second, assuming a constitutional violation exists, we determine whether the right was clearly established at the time of the defendant's alleged violation." Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 325 (1st Cir. 2015) (internal citations and quotation marks omitted). Two inquiries follow the second element of the analysis:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he [or she] was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his [or her] conduct violated the right.

Id. at 325-26 (citing Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir.2011)). If all questions are answered in the affirmative, then qualified immunity is not available. See Mihos v. Swift, 358 F.3d 91, 110 (1st Cir.2004).

The analysis here turns on the second element of the analysis, to wit, whether or not it was clearly established at the time of the events herein that it was unlawful to dismiss a public employee on account of testimony rendered under oath and pursuant to a subpoena. According to the defendants, Hernandez-Mayoral "could reasonably have believed, at the time

of plaintiff's dismissal, that a government employer could terminate an employee on account of testimony the employee gave, under oath, outside the scope of his ordinary job responsibilities, notwithstanding that the testimony pertained to information acquired during the course of employment." Docket No. 32 at page 12. The defendants posit that qualified immunity insulates Hernandez-Mayoral from liability because it was unclear, before the Supreme Court's holding in <u>Lane v. Franks</u>, 134 S. Ct. 2369 (2014),[1] whether the Plaintiff's speech was as a citizen on a matter of public concern or as an employee, and thus, unprotected by the First Amendment. <u>See</u> <u>id.</u>

On the other hand, Chain responded in opposition to the defendants' qualified immunity defense relying mostly on the Supreme Court's holding in <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006). According to the Plaintiff, it was clearly established as of January 2013 "that plaintiff Chain testified on a matter of public concern and as a citizen, rather than as an employee, since his testimony was not made 'pursuant to his official duties.'" Docket No. 36 at page 7. In light of the then-existing precedents, the Plaintiff argues that Hernandez-Mayoral should have known that to dismiss Chain for testifying against Acevedo during the federal criminal proceedings was in violation of the First Amendment. <u>See</u> <u>id.</u> at page 11-12.

To determine whether or not Hernandez-Mayoral is entitled to qualified immunity, the court must first set out the legal contours of the right in question at the time of the relevant events herein.

By January of 2013, it was "well settled that 'as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out.'" <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 29 (1st Cir. 2011) (<u>citing</u> <u>Mercado-Berrios v. Cancel-Alegria</u>, 611 F.3d 18, 25-26 (1st Cir.2010)). "This rule holds true in public employment as well, but 'in recognition of the government's interest in running an effective workplace, the protection that public employees enjoy against speech-based reprisals is qualified.'" <u>McGunigle</u>

---

[1] In <u>Lane v. Franks</u>, the Supreme Court clarified that the mere fact that a public employee's speech "relates to his public employment" or "concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." <u>Lane v. Franks</u>, 134 S. Ct. 2369, 2379 (2014).

v. City of Quincy, 835 F.3d 192, 202 (1st Cir. 2016) (citing Mercado-Berrios, 611 F.3d at 26; Garcetti, 547 U.S. at 418). Accordingly, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti, 547 U.S. at 418 (citations omitted).

Despite limitations, "[c]laims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004). The following inquiries guide the interpretation of a claim of retaliation against a public employee for the exercise of First Amendment rights:

> First, a court must determine whether the employee spoke as a citizen on a matter of public concern. … Second, the court must balance … the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. … Third, the employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision.

Decotiis, 635 F.3d at 29 (internal citations and quotation marks omitted).

"Garcetti recognizes that this first step itself has two subparts: (a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern." Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007). "The determination of whether a plaintiff spoke as a citizen or an employee is fact-intensive." Cannell v. Corizon, LLC, No. 1:14-CV-405-NT, 2015 WL 8664209, at *8 (D. Me. Dec. 11, 2015) (citing Decotiis, 635 F.3d at 35 n. 15). "In Garcetti, the Supreme Court held that public employees do not speak as citizens when they 'make statements pursuant to their official duties,' and that accordingly, such speech is not protected by the First Amendment." Decotiis, 635 F.3d at 30 (citing Garcetti, 547 U.S. at 421).

Now, "[w]hether an employee's speech involves a 'matter of public concern' is a case-specific, fact-dependent inquiry." Curran, 509 F.3d at 46. To that effect, "[t]he relevant inquiry under Garcetti thus has two basic components — (1) what are the employee's official responsibilities? and (2) was the speech at issue made pursuant to those responsibilities?

— both of which are highly context-sensitive." Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 26 (1st Cir. 2010).

> In describing speech made pursuant to employment duties, the [Garcetti] Court included "speech that 'owes its existence to a public employee's professional responsibilities', speech that the employer 'has commissioned or created', speech that the employee 'was paid to' make, speech that the employee's 'duties … required him to' make, speech that amounts to the employee's 'work product', and speech that is an 'official communication [ ].'"

Decotiis, 635 F.3d at 30 (citing Mercado-Berrios, 611 F.3d at 27 n. 9 (quoting Garcetti, 547 U.S. at 421–23)).

Eight years after Garcetti, and almost a year and half after Chain's termination, the Supreme Court clarified in Lane that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech." Lane, 134 S. Ct. at 2379 (concluding that fired employee's subpoenaed sworn testimony during corruption trials regarding information he learned through his employment was citizen speech on matter of public concern). Instead, as the Lane Court explained, "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id. In so stating, the Court in Lane noted that "Garcetti said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." Id. The Supreme Court thus reversed the Eleventh Circuit and found that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment." Id. at 2378. The Court explained that:

> Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen … When the person testifying is a public employee, he may bear separate obligations to his employer … . But any such obligations as an employee are distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart

> from speech made purely in the capacity of an
> employee.

Id. at 2379.

As can be gleaned from the foregoing, "[t]he legal contours of the First Amendment rights of a public employee are, for better or worse, inherently murky." O'Connor v. Spain, 84 F. Supp. 3d 60, 66 (D. Mass. 2015). And when a "legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Singer v. State of Me., 49 F.3d 837, 845 (1st Cir.1995). Accordingly, the court must jump back to the second prong of the qualified immunity defense raised to determine whether such a question existed at the time of the relevant events herein.

The first sub-part of the clearly-established analysis "requires the plaintiff to identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (citing Wilson v. Layne, 526 U.S. 603, 617 (1999); Limone v. Condon, 372 F.3d 39, 45 (1st Cir. 2004) (asking "whether the state of the law at the time of the putative violation afforded the defendant fair warning that his or her conduct was unconstitutional")). Although Chain "need not produce 'a case directly on point' to overcome [defendant's] qualified immunity defense, 'existing precedent must have placed the … constitutional question beyond debate.'" Eves v. LePage, 842 F.3d 133, 141 (1st Cir. 2016) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). In the absence of controlling authority from the Supreme Court or the First Circuit Court of Appeals, "the [plaintiff's] burden is to identify 'a consensus of cases of persuasive authority' from [the First Circuit's] sister circuits." Eves, 842 F.3d at 144 n. 6 (citing Wilson v. Layne, 526 U.S. 603, 617 (1999); see also El Dia, Inc. v. Rossello, 165 F.3d 106, 110 n. 3 (1st Cir. 1999) (recognizing that, "[a]mong other factors, the location and level of the precedent," as well as its age, are important factors in a qualified immunity analysis)).

After careful review of the pleadings, the parties' argument and the applicable caselaw, the court finds that Chain failed to meet his burden. That is because the nature of his First Amendment claim makes it extremely

difficult for him to prove that this right was clearly established when Hernandez-Mayoral terminated him in January of 2013. See Fabiano v. Hopkins, 352 F.3d 447, 457 (1st Cir. 2003).

We shall address his failed arguments in turn.

Firstly, the Plaintiff suggests in his brief that the unlawfulness of Hernandez-Mayoral's actions should have been apparent, even despite the lack of cases directly on point at the time of his termination. See Docket No. 36. Chain claims that pursuant to Garcetti, the contours of his rights were clearly established at the time. See id. at page 8. But the Plaintiff's stance holds no water. The First Circuit has pointed out that "[o]ther courts, in granting qualified immunity, have observed that Garcetti has caused 'substantial disagreement' among lower courts with respect to the scope of retaliation claims by public employees." Eves, 842 F.3d at 143. In fact, it is worth noting that in Lane, the Eleventh Circuit "relied extensively on Garcetti," Lane, 134 S. Ct. at 2376-2377, when it wrongly concluded that Lane's subpoenaed testimony regarding his official activities and in the context of a litigation did not bring Lane's speech within the protection of the First Amendment. However, as we now know, the Supreme Court in Lane found the Eleventh Circuit's construal and interpretation of Garcetti - in a factual context that is similar to Chain's - to be misguided. Ergo, we can only conclude that reliance on Garcetti as definite guidance is insufficient to defeat a qualified immunity defense.

Contrary to what the Plaintiff will have this court find, the truth of the matter is that at the time of his discharge "[t]here were no decisions in this circuit explaining the scope of a public employee's employment duties and what it means to speak pursuant to those duties, nor was there a body of decisions from other circuits that could be said to have put [defendant] on clear notice." Decotiis, 635 F.3d at 37. As set forth supra, it was not until 2014, that the Supreme Court categorically clarified in Lane that speech such as the Plaintiff's constitutes protected citizen speech. So "[e]ven though the broad constitutional rule, as set forth in Garcetti, may have been clearly established, the contours of the right were still cloudy." Id. The constitutional question in this case, thus, fell short of being beyond debate at the time of Chain's termination.

The Plaintiff also asserts in his brief that Lane's holding is only a "slight modification and clarification" of existing law, and that "[a]t best, <u>Lane</u> can demonstrate only *a discrepancy in Eleventh Circuit precedent*, which is insufficient to defeat the defense of qualified immunity." Docket No. 36 at pages 11-12. But the prospect of his argument has a snowball's chance in hell insofar as the Supreme Court in <u>Lane</u> explicitly stated that it "granted certiorari, … , to resolve discord **among the Courts of Appeals** as to whether public employees may be fired — or suffer other adverse employment consequences — for providing truthful subpoenaed testimony outside the course of their ordinary job responsibilities." <u>Lane</u>, 134 S. Ct. at 2377.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011) (<u>citing</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). Insofar as the Eleventh Circuit coincided with his judgment under an analogous set of facts, Hernandez-Mayoral deserves neither label. At any rate, "[p]ublic officials, our judicial superiors tell us, need not be legal savants to win a qualified-immunity case." <u>Belsito Commc'ns, Inc. v. Decker</u>, 845 F.3d 13, 23 (1st Cir. 2016) (<u>citing</u> <u>Crawford-El v. Britton</u>, 523 U.S. 574, 590 (1998)). As a result, "[t]his court finds that a reasonably competent official in [defendant's] position could have believed that [he] was not violating the First Amendment by terminating [plaintiff] under the circumstances of this case." <u>Meagher v. Andover Sch. Comm.</u>, 94 F. Supp. 3d 21, 42-43 (D. Mass. 2015).

Having Plaintiff failed to meet his burden of showing that Hernandez-Mayoral violated "clearly established" federal law, the court must conclude that Hernandez-Mayoral is entitled to qualified immunity.

### IV. CONCLUSION

For all the reasons detailed herein, the defendants' motion for judgment on the pleadings (Docket No. 32) is hereby **GRANTED** and the Plaintiff's Section 1983 claims are thus **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, March 31, 2017.


S/JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE